DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone:  (213) 622-5555
Fax:  (213) 620-8816
E-Mail:  dzaro@allenmatkins.com
              thsu@allenmatkins.com

EDWARD G. FATES (BAR NO. 227809)
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone:  (619) 233-1155
Fax:  (619) 233-1158
E-Mail:  tfates@allenmatkins.com

Attorneys for Plaintiff
WILLIAM J. HOFFMAN, Receiver

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| WILLIAM J. HOFFMAN, Court-appointed permanent receiver for Nationwide Automated Systems, Inc., Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, and Oasis Studio Rentals #3, LLC, and their subsidiaries and affiliates,<br><br>                    Plaintiff,<br><br>          v.<br><br>WILLIAM R. MORRIS, individually and as Trustee of the WILLIAM ROBERT MORRIS TRUST, and DOES 1 THROUGH 10, inclusive,<br><br>                    Defendant. | Case No. 2:17-cv-5176<br><br>COMPLAINT FOR FRAUDULENT TRANSFER |

1     Plaintiff William J. Hoffman of Trigild, Inc. ("Receiver"), the Court-

2  appointed permanent receiver for Nationwide Automated Systems, Inc. ("NASI"),

3  Oasis Studio Rentals, LLC, Oasis Studio Rentals #2, LLC, Oasis Studio

4  Rentals #3, LLC, and their subsidiaries and affiliates ("Receivership Entities"),

5  hereby brings the following Complaint against the above-captioned Defendant and

6  alleges, on behalf of the Receivership Entities, as follows:

7                          **I.     INTRODUCTION**

8     1.     The Receiver was appointed permanent receiver in the Securities and

9  Exchange Commission ("Commission") enforcement action styled as *Securities and*

10 *Exchange Commission v. National Automated Systems, Inc., et al.*, United States

11 District Court, Central District of California, Case No. 14-CV-07249-SJO (FFMx)

12 ("SEC Action"), pursuant to the Preliminary Injunction and Orders (1) Freezing

13 Assets; (2) Prohibiting the Destruction of Documents; (3) Requiring Accountings;

14 and (4) Appointing a Receiver entered in the SEC Action on October 29, 2014

15 ("Preliminary Injunction").

16    2.     Among other things, the Preliminary Injunction calls for the Receiver

17 to recover and marshal, for the benefit of creditors of and investors in the

18 Receivership Entities, any and all assets which were owned, leased, occupied, or

19 otherwise controlled by the Receivership Entities or were otherwise purchased with

20 assets of the Receivership Entities.  The Receiver holds exclusive authority and

21 control over the assets of the Receivership Entities, including over the causes of

22 action alleged herein.

23    3.     By this Complaint, the Receiver seeks to recover transfers of funds out

24 of the Receivership Entities to Defendant that constitute "actually fraudulent" and

25 "constructively fraudulent" voidable transfers under California's Uniform Voidable

26 Transactions Act, Cal. Civ. Code section 3439, *et seq.*

27

28

## II.    JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter on the basis of diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332(a)(1), in that the Receiver, in his capacity as Court-appointed receiver for the Receivership Entities, is a citizen of the state of California, and Defendant is not a citizen of the state of California, and in that the amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      This Court may exercise personal jurisdiction over the above-captioned Defendant pursuant to Federal Rule of Civil Procedure 4(k), and 28 U.S.C. §§ 754 and 1692, because Defendant is the recipients of assets of the Receivership Entities, which assets are alleged, on information and belief, to be located in the state of Texas, and because the Receiver has previously complied with the terms of 28 U.S.C. § 754 by filing in the United States District Court for each of the Districts of Texas copies of the complaint and the order for his appointment filed and entered in the SEC Action.

6.      Venue in the Central District of California is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim at issue occurred in the Central District of California, in that the contracts at issue facilitating the transfers of the Receivership Entity funds to Defendant were entered into in Calabasas, California; the purported business of the Receivership Entities which generated the funds paid to Defendant were operated from offices in Calabasas California; and the receipt and transfers of funds by and between the Receivership Entities and Defendant were facilitated through financial institutions located in or around Calabasas, California.

## III.    PARTIES

7.      The Receiver is the duly appointed permanent receiver for the Receivership Entities, and was appointed permanent receiver for the Receivership Entities pursuant to the Preliminary Injunction.

8.      On information and belief, Defendant William R. Morris, individually and as Trustee of the William Robert Morris Trust, is a citizen and resident of the County of Travis, Texas, and is the recipient of assets of the Receivership Entities as described further herein.

9.      The Receiver is ignorant of the true names and capacities, whether individual, corporate, associate or otherwise, of Does 1 through 10.  The Receiver is informed and believes, and based thereon alleges, that each fictitiously named defendant is the recipient of fraudulently transferred funds from the Receivership Entities, or was in some way responsible for, participated in or contributed to the matters and things of which the Receiver complains herein, and in some fashion, has legal responsibility therefor.  When the exact nature and identity of such fictitious defendant's responsibility for, participation in and contribution to the matters and things herein alleged is ascertained, the Receiver will seek to amend this Complaint and all proceedings herein to set forth the nature of these defendant's identity.

10.      The Receiver is informed and believes, and based thereon alleges, that Does 1 through 10, are principals, officers and/or agents of each of the other defendants, and directed, ratified, or caused the conduct and/or omissions alleged in this Complaint.  The Receiver is further informed, and on that basis alleges, that Does 1 through 10 are the alter egos of the other defendants, and as such are liable for the conduct and damages alleged against the other defendants herein.

11.      The Receiver is informed and believes, and based thereon alleges, that the defendants are, and at all times relevant herein were, the agents, principals, partners, co-conspirators and/or co-venturers of each other, that each of them acted within the course, scope and authority of said relationships, and that, as a result, are jointly and severally liable for the acts alleged herein.

## IV.   FACTUAL ALLEGATIONS

A.   **The Purported Business of the Receivership Entities and the Commencement of the SEC Action**

12.   As alleged by the Commission in the SEC Action, NASI raised money from investors by selling them Automated Teller Machines ("ATMs"), leasing the ATMs back from investors, managing the ATMs for the investors, and paying the investors "rents" that were guaranteed to total at least 20% of the purchase price paid for the ATMs per year.  The Receivership entities also paid referral fees to investors and other agents who recruited new investors to purchase ATMs.

13.   In actuality, the Receivership Entities did not sell any ATMs to investors, but instead fabricated and sold fictitious ATMs with fabricated serial numbers and locations.  The "rents" paid to investors who purchased fictitious ATMs, as well as referral fees paid to investors and agents, were paid from the amounts raised from other investors.  Thus, NASI operated a classic Ponzi scheme.

14.   On or about September 17, 2014, the Commission initiated the SEC Action against the Receivership Entities and their principals Joel Gillis and Edward Wishner, alleging violations of federal securities laws.  The Commission petitioned for the Receiver's appointment, and on September 30, 2014, and October 29, 2014, this Court entered orders appointing the Receiver, first on a temporary basis and then as permanent receiver for the Receivership Entities.

B.   **The Receiver's Authority and Investigation Pursuant to His Appointment**

15.   Pursuant to the terms of his appointment, the Receiver is vested with exclusive authority and control over the assets of the Receivership Entities. Specifically, Article XII of the Preliminary Injunction and Article VIII of the Freeze Order vests the Receiver with the "full powers of an equity receiver, including, but not limited to . . . full power to sue . . . and take into possession all [receivership] property."  (Emphasis added.)

16.     The Receiver's investigation to date supports and confirms the Commissions allegations in the SEC Action, including that NASI operated a Ponzi scheme, sold fictitious ATMs to investors and made rent and referral fee payments to investors from funds raised from other investors.  Defendants Gillis and Wishner filed answers to the SEC's complaint in which they admit the facts supporting the SEC's Ponzi scheme allegations.

**C.     Criminal Indictment and Guilty Pleas**

17.     On December 16, 2014, Gillis and Wishner were arrested and charged with mail fraud, wire fraud, conspiracy, and aiding and abetting.  *United States v. Gillis, et al.*, C.D. Cal. Case No. 14-CR-00712-SJO.  Gillis and Wishner waived indictment, surrendered their passports, and were released on bail.  On January 13, 2015, and January 21, 2015, respectively, Wishner and Gillis plead guilty to all four counts of the criminal information.  In connection with Gillis' guilty plea, a statement of facts signed by Gillis that supports the guilty plea was filed by the government ("Statement of Facts").  As part of his guilty plea, Gillis stated under oath that the facts in the Statement of Facts were true.  The Statement of Facts is attached hereto as Exhibit A.

18.     The Statement of Facts is fully incorporated herein by reference.  The facts stated therein are included in this complaint as though fully restated and alleged herein.

**D.     The Fraudulent Transfers to Defendant From the Receivership Entities**

19.     Upon the Receiver's appointment, the Receiver promptly moved to secure control over NASI's offices, assets, and operations, including its electronic and physical records and data.  Altogether, these records included 92 boxes of documents and electronic images containing a total of over 56,000 documents.  Despite the large volume of records obtained, there was no way for the Receiver to identify profiting investors without expending considerable time to reconstruct

financial receipts and disbursements for the Receivership Entities going back more than 15 years from the date of his appointment.  The Receiver's investigation into the assets and financial affairs of the Receivership Entities was further complicated because the Receivership Entities did not keep traditional accounting systems or software, balance sheets, profit and loss statements or other financial statements, bank statements or other banking records for their accounts, or a traditional database of investor accounts.  Accordingly, at the outset of his appointment and for lengthy period of time thereafter, the Receiver had no way to know of specific payments received from individual investors or payments made to individual investors as purported profits, including payments received from or made to Defendants by NASI.

20.     As reliable information about NASI's financial transactions was not available, the Receiver and his staff had to devote considerable time and diligently reconstructed the company's ledger of transactions.  This required the Receiver and his staff to manually source information from years of bank statements and cleared checks in order to create a schedule of checks paid by NASI to investors.  On average, over 2,000 checks were paid by NASI to investors on a monthly basis in 2014.  A significant amount of time was also spent by the Receiver and his staff to reconstruct banking transactions from 2005, 2006 and 2007, as financial institutions no longer kept these records since they are only required to maintain account records going back seven years.  Reconstruction of these years of payments to investors was not completed until the second quarter of 2015, and it was not until the third quarter of 2016 that the Receiver was able to complete the reconstruction of both payments received from and made to Defendant such that a determination could be made as to whether Defendant received profits in excess of his initial deposits.

21.     Specifically, including payments to and from Defendant going back to 1999, it was not until July 14, 2016 that the Receiver discovered that the Defendant

had received profits over and above his initial deposits.  Once discovered, the Receiver promptly made a demand on Defendant for disgorgement in a letter dated July 21, 2016.  Defendant did not accept the Court-approved settlement offer in the letter and the Receiver then promptly filed this action.

22.     Attached hereto as <u>Exhibit B</u> is a schedule of bank transfers from Defendant to NASI and from NASI to Defendant.  As the schedule reflects, the net amount received by Defendant ("Profit Amount") is calculated by subtracting (a) transfers from NASI to Defendant ("Payments from NASI") from (b) transfers from Defendant to NASI ("Deposit Amount").  Defendant's Profit Amount is $82,500.00.[1]

23.     Defendant had no business dealing with NASI apart from transactions relating to the purchase and leasing of fictitious ATMs and provided no services or other value to NASI other than amounts paid for the fictitious ATMs.

## COUNT I – FRAUDULENT TRANSFER

24.     The Receiver incorporates herein each and every allegation contained in Paragraphs 1 through 23, inclusive, hereinabove set forth.

25.     Over the course of its pre-receivership operations, NASI paid the Profit Amount to Defendant with the intent to hinder, delay, or defraud NASI's creditors. Such payments were made from the proceeds of the Ponzi scheme which were generated from investors in the scheme.

26.     The Receivership Entities received nothing of value in exchange for the payments that comprise the Profit Amount.

27.     At the time the payments comprising the Profit Amount were made to Defendant, NASI was engaged in or about to engage in business transactions for

---

[1] All transfers of Payments from NASI occurring (a) after Defendant received payments equal to the Deposit Amount, and (b) more than seven years prior to the date of filing this Complaint have been excluded from the calculation of the Profit Amount.

which its remaining assets were unreasonably small in relation to the business or transaction.

28.     NASI was insolvent, or became insolvent, shortly after the subject payments comprising the Profit Amount were made to Defendant.

29.     NASI intended to incur, or believed or reasonably should have believed it would incur, debts beyond its ability to pay as they became due.

30.     As a consequence, the full Profit Amount is an actual and constructively fraudulent transfer under California's Uniform Voidable Transactions Act, Cal. Civ. Code section 3439, *et seq.*, and is subject to immediate disgorgement to the Receiver.

## **PRAYER FOR RELIEF**

WHEREFORE, the Receiver prays for judgment against Defendant as follows:

(a)     For a judgment against Defendant, avoiding the transfer from NASI to Defendant comprising the Profit Amount; and

(b)     For an order deeming the Profit Amount paid to Defendant to be held in constructive trust for the benefit of the Receivership Entities; and

(c)     For an order directing Defendant to immediately pay the Profit Amount, plus prejudgment interest and costs, to the Receiver; and

(d)     For such other and further relief as the Court may deem proper.


Dated:  July 13, 2017                    ALLEN MATKINS LECK GAMBLE
                                          MALLORY & NATSIS LLP
                                         DAVID R. ZARO
                                         EDWARD G. FATES
                                         TIM C. HSU


                                         By:_____/s/ Tim C. Hsu_____
                                             TIM C. HSU
                                             Attorneys for Plaintiff WILLIAM J.
                                             HOFFMAN, Receiver